**ORIGINAL**

# United States Court of Federal Claims

No. 17-171 C
Filed: October 30, 2017

**FILED**

**OCT 30 2017**

**U.S. COURT OF FEDERAL CLAIMS**

---

**SCOTT GOODSELL,**

    *Plaintiff,*

v.

**UNITED STATES OF AMERICA,**

    *Defendant.*

---

Motion to Dismiss, RCFC 12(b)(1); Lack of Jurisdiction; Department of Veterans Affairs; Final Decision from Contracting Officer; Wrongful Termination of Lease; Motion to Dismiss, RCFC 12(b)(6); Failure to State a Claim

*Scott Goodsell, Esquire, pro se*, San Jose, CA, plaintiff.

*Steven C. Hough, Esquire*, United States Department of Justice, Civil Division, Washington, DC, for defendant.

## OPINION AND ORDER

**Hodges,** *Senior Judge*.

Plaintiff filed his complaint in February 2017 against the United States through the Veterans Administration (1) alleging breach of a lease contract; (2) requesting declaratory relief to define the parties' rights under the lease with regard to parking space allotment; (3) requesting declaratory relief to define the parties' rights under the lease with regard to removal of a flagpole from plaintiff's property; and (4) alleging bad faith and breach of the implied duty of good faith and fair dealing.

Defendant filed a motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim as to count one in part and counts two, three, and four in their entirety. We deny defendant's motions to dismiss for the reasons that follow.

## BACKGROUND

Plaintiff owns a multi-tenant office building and two adjacent parking lots in San Jose, California. The property housed the San Jose Veterans Center and four law firms.

Defendant occupied about 3,700 square feet of plaintiff's 12,000 square foot rental property.

Defendant inquired about office rental space at plaintiff's property in March 2013, stating that it was interested in the property because it offered on-site parking and a quiet residential neighborhood. After several more visits, defendant invited plaintiff to respond to a VA Request for Lease Proposal. The proposal process lasted from June to November 2013 and resulted in a Conditional Award Letter to plaintiff on November 15.

Upon receipt of the award, plaintiff hired an architect, a general contractor, and various other building professionals to prepare construction drawings and obtain City building permits. He conferred with government staff regarding changes to the standard form lease, and the Government incorporated the changes into the lease by a series of amendments.

### Contract Negotiation

Two months after award, defendant changed the proposed office layout from the original offer. This generated Change Order 1 and resulted in architectural and structural building modifications. From January to October 2014, the parties prepared and exchanged architectural plans. Between November 2014 and March 2015, the parties' building professionals constructed tenant improvements requested by the Government. Defendant's unilateral plan modifications during the construction process resulted in issuance of Change Orders 2, 3, and 4.

Plaintiff and defendant executed the final lease on May 14, 2014. The lease called for a monthly rent of $8,010, to be paid in arrears on the first of each month of a 5-year firm/10-year lease term beginning upon acceptance of the premises. Defendant accepted occupancy of the improved office space on March 11, 2015.

### Parking

Defendant requested a number of parking spaces during the proposal process that exceeded plaintiff's standard lease offering. The parties negotiated this issue and plaintiff agreed to allocate fourteen employee-only tandem parking spaces in the rear lot to defendant plus eleven parking spaces in the front for defendant's clients. This scheme was set out on a hand-drawn plan produced by plaintiff. Defendant agreed to pay an additional fee of $50/space/month for the eleven "non-exclusive," client-only parking spaces in the front lot. This $6,600/year parking fee was incorporated into the Lease at section 1.03.

Lease section 102A stated that plaintiff would provide twenty-four parking spaces and "such additional parking spaces as required by the applicable code of the local government entity having jurisdiction over the property." This referred to spaces

mandated by the Americans with Disabilities Act. Two ADA spaces already existed. The lease did not specify a number of mandated spaces to be available.

The parking plan that was incorporated into the lease as Exhibit C[1] differed from the plan that plaintiff's architect prepared prior to the November 2014 lease award. The lease plan was different from plaintiff's hand-drawn plan in two respects: (1) the rear lot parking was striped for thirteen single-vehicle parking spaces; and (2) no additional ADA parking spaces were provided in the front or back lots because the City code did not require them. The City approved plaintiff's parking plan showing only the two existing ADA spaces.

### Parking Disputes

Defendant advised plaintiff in July 2015 that it preferred fourteen tandem employee parking spaces in the rear lot. Plaintiff striped the spaces accordingly. The Veterans Administration asserted at various times thereafter that it was entitled to additional ADA parking spaces (per the hand-drawn plan), and plaintiff responded that defendant was not so entitled (per express Lease provisions and prior VA-approved construction drawings).

Defendant withheld a portion of rent in March 2016 as a penalty for the lack of three additional parking spaces, and stated that the Government would continue to withhold such sums until three additional ADA spaces were provided. When plaintiff advised defendant's counsel that no such penalty provision existed under the lease, defendant released the withheld rental sums.

Plaintiff had a combination lock on a rolling metal gate protecting the rear lot. He states that defendant had been haphazard in locking the gate, and plaintiff's personal property was stolen and his vehicle vandalized as a result. Defendant's employees removed or destroyed plaintiff's gate lock three times. Plaintiff then installed a non-cuttable lock and advised defendant's employees to use the front lot for parking until plaintiff could resolve the matter. From May 2016 to January 2017 when the lease was terminated, defendant's employees and clients used the front parking lot exclusively. Plaintiff contends that until September 2016, twenty-four parking spaces were always available for defendant's use.

### Rent Disputes

Defendant's contracting officer issued a Final Decision on September 7, 2016, to withhold $311.67 per month as a penalty for failure to provide access to the rear lot spaces and for failure to provide additional ADA parking spaces. Thus, defendant modified the lease to pay for only ten parking spaces while continuing to use the same number of spaces as before the modification. Plaintiff requested clarification of the

---

[1] This Exhibit and plaintiff's hand-drawn parking plan were not provided to the court as part of the record.

contracting officer's decision on September 9, but has received no response. Plaintiff alleges that it received no September 2016 rent payment.

Defendant paid rent one month late for the months of November 2016 through January 2017. In February, plaintiff received defendant's pro rata payment for the month of January. Plaintiff contends that since defendant took occupancy in March 2015, defendant's staff consistently had directed clients to double-park and triple-park in unauthorized areas, thereby blocking striped parking spaces.

### Flagpole Issue

Defendant asked that it be permitted to install a flagpole on site in August 2015. Plaintiff consented on the express condition that defendant agree to remove the flagpole upon conclusion of the tenancy. Defendant installed the flagpole in October 2015, and has not removed it to this day. Plaintiff sent a letter to defendant in 2015 with a proposed lease amendment regarding the flagpole removal, but defendant has not responded to this letter.

### Termination

By letter dated January 23, 2017, defendant's contracting officer informed plaintiff that the Government would terminate the lease and vacate the premises "effective January 26, 2017." The letter also stated that defendant would not pay rent beyond that date.

Defendant returned its keys to the office space on January 26, three days after providing plaintiff written notice of termination. Plaintiff asserts that defendant owes $877,482.59 on the lease contract. This is based on the lease's total 10-year term value of $1,057,320.00 minus rents received of $179,837.49.

## DISCUSSION

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant filed a Motion to Dismiss for lack of subject matter jurisdiction because plaintiff had not filed a certified claim as required by the Contract Disputes Act. Plaintiff contends in response that defendant's letters of September 7, 2016, with its Final Decision to withhold $311.67 per month in rent, and January 23, 2017 letter terminating the lease confer subject matter jurisdiction on this court.

Plaintiff argues that the contracting officer's termination letter is a "claim" under the Tucker Act. The Tucker Act empowers this court "to render judgment upon any claim by or against, or dispute with, a contractor . . . including a dispute concerning termination

of a contract." 28 U.S.C. § 1491(a)(2) (2011). The Contract Disputes Act of 1978 does not define the term "claim," but the Federal Acquisition Regulation defines the term as:

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or related to the contract. 48 CFR § 33.201 (1988).

The Court of Appeals for the Federal Circuit has adopted this definition of the term. *See Placeway Const. Corp. v. United States*, 920 F.2d 903, 906 (Fed. Cir. 1990); *D.L. Braughler v. West*, 127 F.3d 1476, 1480 (Fed. Cir. 1997). In *Placeway*, the Federal Circuit found that the Claims Court had jurisdiction over a contract dispute where a contracting officer "effectively granted the government's claim . . . when he declined to pay Placeway the balance due on the contract." *Placeway*, 920 F.2d 903, 906 (Fed. Cir. 1990); s*ee also Sprint Comm. Co. v. GSA*, GSBCA No. 14263, 97-2 BCA par. 29, 249 (applying the Federal Circuit's definition and holding that a contracting officer's assertion of a contract right for the government to withhold from its contractor a specified monetary amount qualifies as a government claim). The court reasoned that the contracting officer's decision was final, giving rise to a claim within the meaning of FAR 33.201, even though it was not certified and did not contain typical boilerplate language included for the contractor's protection. Because the contracting officer's decision was adverse to the plaintiff, the court found it was proper for the plaintiff to appeal it to the United States Court of Federal Claims.

    Defendant's January 23 termination letter informed plaintiff that "effective January 26, 2017, the Government w[ould] vacate the premises . . . thus, terminating Lease Number VA261-13-L-0027..." and that "the Government w[ould] not pay rent for use of the subject space beyond [January 26]." The contracting officer's letter asserts as a matter of contractual right that the Government is entitled to withhold from plaintiff the sum certain of all remaining lease payments.[2] The essential elements of a claim, as defined in the FAR, are present.

    Defendant argues that the letter cannot qualify as a claim because Mr. Goodsell did not submit a claim or receive a final decision from the contracting officer. The FAR definition adopted by this Circuit requires only one party to make a written assertion to give rise to a claim. Thus, this court may exercise subject matter jurisdiction.

---

[2] Defendant's letter is ambiguous as to whether defendant's termination was for convenience or for some alleged default. However, defendant makes clear in its Response to the Court's inquiries that the contracting officer terminated the lease pursuant to the contract's Default by Lessor clause, or in the alternative, pursuant to the common law theory of constructive eviction.

**II. Motion to Dismiss for Failure to State a Claim**

A complaint fails to state a claim upon which relief may be granted when the facts asserted do not entitle plaintiff to a legal remedy. *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)").

**a. Breach of Contract**

Plaintiff first pleads breach of contract. Plaintiff alleges that defendant and plaintiff entered into a lease, that defendant occupied plaintiff's premises, and that defendant left the subject premises before expiration of the lease and has failed to pay rents under the lease. The contract provided for a lease of "10 years, 5 years firm" with a termination clause requiring the Government to give at least 90 days written notice to terminate after completion of year 5. The phrase "firm term" is defined in the lease as "that part of the Lease term that is not subject to termination rights." Defendant made rental payments for only a portion of the firm term then terminated the lease with only three days' notice. These allegations are sufficient to state a claim for breach of the lease contract.

Defendant argues that the court should dismiss plaintiff's breach of contract claim and bad faith claim to the extent that they seek damages for unpaid rent beyond the lease's five-year firm term because such damages are speculative. Plaintiff counters that the second five-year period is not merely an electable add-on option, but a part of the original ten-year term. The issue here is whether plaintiff has alleged sufficient facts to raise a right to relief to unpaid rent on the second five-year term.

This dispute raises issues of contract interpretation. Such issues call for the court to construe any ambiguities against the party that drafted the contract -- in this case, the Government. The contract language does not describe the second five-year term as optional, though it does distinguish the two time periods by calling the first term "firm," but not the second. The contract does not state that the lease may be terminated at all during the first five-year term.

Defendant argues that it still has a right to terminate for common law constructive eviction. Construing the contract language at issue against defendant, the lease would mean what it appears to mean: the first term cannot be terminated and the second five-year term cannot be terminated except by 90-days' notice from the Government. The second term would not be optional and damages would not be speculative.

Plaintiff also argues that contract interpretation is an evidentiary issue inappropriate for disposal on a 12(b)(6) motion. It is sufficient to allege, as plaintiff has, that the lease term was for ten years and that defendant terminated the lease prematurely.

### b. Declaratory Relief

Plaintiff seeks several forms of declaratory relief, including defendant's withholding rental payments as a penalty and defendant's refusing to remove the flagpole it installed in October 2015 upon conclusion of its tenancy. Defendant seeks to dismiss these claims as moot because any contractual rights were extinguished upon defendant's termination of the lease and because they are duplicative of plaintiff's breach of contract claim. Plaintiff counters that his request for declaratory relief is both necessary and appropriate because resolution of these issues could result in further monetary relief. We do not address plaintiff's request for declaratory relief at this stage.

### c. Breach of the Implied Covenants of Good Faith and Fair Dealing

Plaintiff also alleges breach of the implied covenants of good faith and fair dealing because defendant's actions created plaintiff's purported default on the lease. Plaintiff assumes that its alleged default arose in part from defendant's inability to access the rear parking lot, but that problem arose because defendant broke and stole plaintiff's locks on multiple occasions. Defendant continued to use the front parking lot exclusively, for both employees and clients, for nearly five months. Furthermore, plaintiff argues that defendant used the lease termination as a pretext for finding larger office space to accommodate defendant's needs.

Defendant maintains that plaintiff has presented no evidence that the Government acted with malice or a specific intent to injure him, and thus his bad faith claim should fail. Additionally, defendant argues that because plaintiff continued to receive rent payments until termination and defendant did not appropriate the fruits of the contract for itself, it could not have breached the implied covenant of good faith and fair dealing. We are not satisfied that defendant has stated the tests for finding violations of the implied covenants; in any event, it is not necessary to resolve this issue at present.

We have not discussed in detail all the parties' claims and arguments because the key issue at this stage is jurisdiction. Defendant moves to dismiss for lack of jurisdiction because plaintiff did not file a certified claim. The case law in this circuit holds that government claims similar to those in this case are sufficient to grant this court jurisdiction.

Defendant's other basis for dismissal is failure to state a claim for which we can grant relief. Mr. Goodsell's allegations exceed the level of mere speculation, and they clearly state claims upon which relief may be granted in this court.

The parties makes arguments at this preliminary stage that seem subject to facts that have not yet been developed. We have no doubt that plaintiff's claims fall within this court's Tucker Act jurisdiction, and that plaintiff has submitted causes of action for which we could grant relief.

## CONCLUSION

Defendant's motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim are DENIED. The parties will consult and agree on a joint status report to be filed no later than November 15, 2017, setting out a proposed schedule for resolving this case. They may suggest that we hold oral arguments within the near future to clarify some of the issues raised here.

**IT IS SO ORDERED.**

*Thomas C. Wheeler* (signature)
Thomas C. Wheeler
Judge, for
Robert H. Hodges, Jr.
Senior Judge